# EXHIBIT 1

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and between named plaintiff Ethan Merbaum ("Named Plaintiff"), on behalf of himself and similarly situated employees who file a claim for settlement proceeds (collectively "Claimants"), on the one hand, and defendant Cady Studios, LLC ("Defendant"), on the other.

### RECITALS

WHEREAS, the Named Plaintiff filed a Complaint against Defendant in the U.S. District Court for the Northern District of Georgia on December 16, 2016 (the "Litigation"); and

WHEREAS, the Complaint asserted a collective action claim under the Fair Labor Standards Act ("FLSA"), and sought recovery of alleged unpaid minimum wages resulting from under-reimbursed vehicle costs, liquidated damages, interest, attorneys' fees and costs on behalf of current and former photographers who have been employed at Defendant's studios during times relevant; and

WHEREAS, Defendant denied and continues to deny the allegations in the Complaint and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or cause of action asserted in the Litigation. Nonetheless, without admitting or conceding liability, wrongdoing, or damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, the Parties have vigorously litigated this case, and Defendant's and Named Plaintiffs' Counsel have analyzed extensive work time, payroll, driving, and expense reimbursement data produced by Defendant; and

WHEREAS, Defendant's Counsel and Named Plaintiffs' Counsel have thoroughly analyzed and evaluated the merits of the claims against Defendant, the merits of Defendant's responses to those claims and its potential defenses, the potential damages to be recovered at a trial, and Named Plaintiffs' Counsel has evaluated the impact of this Agreement on the potential Claimants;

WHEREAS, the Parties mediated their dispute for a full day in Atlanta, Georgia on August 31, 2017, which mediation was conducted by an experienced wage and hour class and collective action mediator, A. Lee Parks, Esq. (the "Mediator"), and thereby reached an accord resulting in this Agreement;

and

WHEREAS, based on their analysis and evaluation of relevant factors, and recognizing the risks of continued Litigation, including the possibility that the Litigation, if not settled now, might result in no recovery whatsoever for the Named Plaintiff and the Claimants, might result in a recovery less favorable to the Named Plaintiff and the Claimants, might result in a recovery more favorable to the Named Plaintiff and the Claimants, and the likelihood that any recovery would not occur for several years, and after extensive mediation with an experienced mediator, counsel for the Parties are satisfied that the terms and conditions of the Agreement are fair, reasonable, and

1

adequate, and Plaintiffs' Counsel is satisfied that this Agreement is in the best interest of the Named Plaintiff and the Claimants.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Named Plaintiff's and Claimants' state and federal wage and hour claims accrued through the date of this Agreement on the following terms and conditions:

## I. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     **Agreement**. "Agreement" means this Settlement and Release Agreement.

1.2     **Acceptance Period**. "Acceptance Period" means the one-hundred eighty (180) days that a Photographer has to sign and cash a Settlement Check or request a replacement check.

1.3     **Claimant**. "Claimant" means those Photographers who file valid Claim forms in the Litigation within forty-five (45) days from the mailing of the Notice to them.

1.4     **Claim Form**. "Claim Form" means **Exhibit B**, the form approved by Defendant and Named Plaintiff's Counsel and subject to Court approval, which each Photographer must complete in full and return, via first class mail with a postmark on or before the date that is forty-five (45) days following the mailing of the Notices, to recover a share of the Settlement proceeds.

1.5     **Named Plaintiff's Counsel.** "Named Plaintiff's Counsel" or "Plaintiff's Counsel" means Weinhaus & Potashnick and Liberman, Goldstein & Karsh.

1.6     **Court**. "Court" means the U.S. District Court for the Northern District of Georgia.

1.7     **Days**. "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

1.8     **Defendant.** "Defendant" or "Cady Studios, LLC" means Cady Studios, LLC and any related entities.

1.9     **Defendant's Counsel**. "Defendant's Counsel" means Deborah J. Livesay of Taylor English Duma LLP. For purposes of providing notices under this Agreement, Defendant's Counsel shall refer to Deborah J. Livesay.

1.10    **Effective Date**. "Effective Date" shall be the last of the following dates:

(A)     If there is no appeal of the Court's Settlement Approval Order, the date thirty (30) days after entry of such Order; or

(B)    If there is an appeal of the Court's Settlement Approval Order, the day after all appeals are resolved in favor of settlement approval of the terms and conditions of this Agreement.

**1.11**    **Settlement Approval Order**. "Settlement Approval Order" means the Order entered by the Court approving the terms and conditions of this Agreement, and Dismissal of the Litigation with prejudice.

**1.12**    **Litigation**. "Litigation" means the claims asserted in *Merbaum v. Cady Studios, LLC,* Case No. 1:16-cv-04623-TWT, pending in the Court which alleges violations of the federal minimum wage resulting from under-reimbursed vehicle costs incurred in performing the Photographers' jobs for Defendant..

**1.13**    **Maximum Settlement Amount**. "Maximum Settlement Amount" means the maximum amount of Ninety-Five Thousand and No/100ths Dollars ($95,000.00) plus the Named Plaintiff's share of the mediator's fee, which Defendant has agreed to pay to fully resolve and settle this Litigation, including all unpaid vehicle expenses, penalties, fines, liquidated damages, interest, attorney's fees, costs, taxes, claims administration fees, court costs and any other costs whatsoever, and any and all amounts to be paid to or on behalf of Named Plaintiff and Claimants, and any Court-approved Service Award to the Named Plaintiff. Under no circumstance will Defendant be required to pay more than the gross total of Ninety-Five Thousand and No/100ths Dollars ($95,000.00) plus Named Plaintiff's share of the mediator's fee.

**1.14**    **Net Settlement Fund**. "Net Settlement Fund" means the remainder of the Maximum Settlement Amount after deductions for (1) Court-approved attorneys' fees and costs for Named Plaintiff's Counsel; (2) a Court-approved Service Award to the Named Plaintiff as specified herein; and (3) settlement administration costs.

**1.15**    **Notice**. "Notice" means the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing, a copy of which is attached as **Exhibit A.**

**1.16**    **Parties**. "Parties" shall mean, collectively, Named Plaintiff, all Claimants, and Defendant.

**1.17**    **Photographer(s)**. "Photographer" or "Photographers" means all current or former photographers who worked a minimum of <u>one week</u> for Defendant at any time during the period commencing January 1, 2015 through August 31, 2017. Defendant has represented that there are a total of approximately four-hundred sixteen (416) Photographers.

**1.18**    **Named Plaintiff**. "Named Plaintiff" shall mean Ethan Merbaum.

**1.19**    **Recovery Period**. "Recovery Period" means January 1, 2015 through August 31, 2017.

**1.20**    **Released Parties**. The "Released Parties" means Defendant and each of its parents, divisions, affiliates, subsidiaries, predecessors, successors, and their present and former officers, directors, shareholders, members, managers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns,

and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity which could be jointly liable with any of them.

**1.21**   **Settlement Checks**. "Settlement Checks" means checks issued to Claimants for their share of the Net Settlement Fund, the amounts thereof to be calculated in accordance with this Agreement.

## 2.   APPROVAL AND SETTLEMENT NOTICE

**2.1**   **Cooperation.**  Defendant agrees to cooperate with Named Plaintiff's Counsel by providing accurate and timely information, to the extent reasonably available, necessary to calculate the Settlement Checks, and by providing Named Plaintiff's Counsel with the names and last known address of Photographers.

**2.2**   **Dispute Resolution.**  In the event of a dispute regarding the calculation of a Photographers' Settlement Check or a Photographers' weeks worked, Named Plaintiff's Counsel and Defendant's Counsel will confer in good faith to resolve the dispute.

**2.3**   **Settlement Approval Motion.**

(A)   Within thirty (30) days after the execution of this Agreement, Named Plaintiff's Counsel will submit to Defendant a draft motion seeking certification of a collective action and approval of the Parties' settlement ("Settlement Approval Motion"). In connection with the Settlement Approval Motion, Named Plaintiff's Counsel will submit to the Court a proposed Notice of Settlement, a proposed Claim Form, and a proposed Settlement Approval Order. Defendant will review and make any comments and/or suggestions with respect to the Settlement Approval Motion and related documents within seven (7) days after receipt of the draft Settlement Approval Motion from Named Plaintiff's Counsel.  Named Plaintiff will retain the right to have ultimate approval of the final contents of the Settlement Approval Motion and will file the final Settlement Approval Motion with the Court.

(B)   The proposed Settlement Approval Order will (1) include the findings required for an FLSA collective action (2) provide for certification of an FLSA collective action, (3) approve the settlement as fair, adequate, and reasonable; (4) include a finding that the settlement resolves a *bona fide* dispute between the Parties, (5) incorporate the terms of the Release, as described herein; (6) dismiss the Litigation with prejudice, while retaining jurisdiction to resolve any disputes regarding settlement administration; (7) award Named Plaintiff's Counsel fees and costs; and (8) award Named Plaintiff the Service Award contemplated below.  Defendant will not oppose the Settlement Approval Motion, provided that Defendant's counsel has had seven (7) days to communicate all of Defendant's comments and suggestions on the motion, as provided for above.

(C)   The Parties will work together, diligently and in good faith, to obtain expeditiously a Settlement Approval Order and a final judgment and dismissal of claims.

**2.4     Notice to Photographers.**

(A)     Named Plaintiff's Counsel shall administer the Settlement.  Named Plaintiff's Counsel will be responsible for locating Photographers through reasonable efforts described below; mailing of Notices and Claim Forms to Photographers in accordance with the Court's Settlement Approval Order; responding to Photographers' inquiries; resolving disputes relating to Photographers' weeks worked and settlement share amounts; calculating the amounts of the Settlement Checks in accordance with the Court's Settlement Approval Order; distributing Settlement Checks to Photographers; and distributing the Service Award.

(B)     Within ten (10) days of the Court's issuance of a Settlement Approval Order, Defendant will provide Named Plaintiff's Counsel, in electronic form, for all Photographers the following information: name, Social Security Number, last known address, date(s) of hire, date(s) of termination or last check date(s) as a photographer, state(s) worked by each Photographer, and number of weeks worked as a photographer within the Recovery Period as that information exists on file with Defendant ("Photographers List").

(C)     Within twenty (20) days of the receipt of the Photographers List from Defendant, Named Plaintiff's Counsel will mail to all such Photographers, via United States Mail, postage prepaid, the Court-approved Notice of Settlement (Exhibit A), a Claim Form (Exhibit B), and a return postage-prepaid envelope.

(D)     Named Plaintiff's Counsel will take reasonable and customary steps to obtain the correct address of any Photographers for whom a Notice and Claim Form are returned by the post office as undeliverable, and Named Plaintiff's Counsel shall attempt re-mailings as described in this Agreement.

**2.5     Effect of Failure to Grant Settlement Approval**.   The settlement and this Agreement are contingent upon the Court's approval.  In the event (1) the Court fails to enter a Settlement Approval Order approving the settlement (failure by the Court or an appellate court to award or sustain the full amount of the Service Awards or Named Plaintiff's Counsel's attorney's fees and expenses will not constitute failure to approve the settlement or a material modification of the settlement); and (2) the Parties do not jointly agree to (a) seek reconsideration or appellate review of the decision denying entry of judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement, then the settlement and this Agreement will become void *ab initio*.  In the event the settlement and this Agreement becomes null and void:

(A)     The Litigation will proceed as if no settlement had been attempted, Defendant will have no payment obligations whatsoever and Defendant will have no obligation to fund the Settlement.  In that event, the collective action certified for purposes of settlement shall be decertified without prejudice, Defendant may contest whether this Litigation should be maintained as a class or collective action and contest the

merits of the claims being asserted by the Named Plaintiff in this action, and the parties will split evenly any claims administration expenses.

(B)     Notice will be provided to Photographers that the Agreement did not receive approval and that, as a result, no payments will be made to Claimants under the Agreement.

(C)     This Agreement, including the Exhibits thereto, will not be used for any purpose in connection with the Litigation, any future litigation, or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint, expect that the non-disclosure obligations in Section 6 below will remain in effect.

## 3.    SETTLEMENT TERMS AND ADMINISTRATION

3.1     **Settlement Amount.** Defendant agrees to the Maximum Settlement Amount of Ninety-Five Thousand and No/100ths ($95,000.00) plus the Named Plaintiff's share of the mediator's fee, which shall be the maximum amount necessary pursuant to the terms of this Agreement to fully resolve and satisfy any and all amounts to be paid to or on behalf of Claimants, and any Court-approved Service Award (not to exceed $3,000.000) to the Named Plaintiff, and any claim for attorneys' fees and costs approved by the Court. Under no circumstances will Defendant be required to pay more than the gross total of Ninety-Five Thousand and No/100ths ($95,000.00) plus the Named Plaintiff's share of the mediator's fee under the terms of this Agreement.

3.2     **Portion of Settlement Amount Payable as Attorneys' Fees and Costs.**

(A)     In the Settlement Approval Motion, Named Plaintiff's Counsel will petition the Court for an award of attorneys' fees of no more than one-third of the Maximum Settlement Amount (not to exceed thirty-one thousand six hundred sixty-six dollars and 66/100 cents $31,666.66), for reimbursement of their actual litigation costs and expenses (not to exceed $2,500.00), and for reasonable claims administration expenses; all to be paid from the Maximum Settlement Amount. Defendant will not oppose this application.

(B)     The substance of Named Plaintiff's Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Named Plaintiff's Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Settlement Approval Motion.

3.3     **Service Award**

(A)     In return for the risk he incurred and his service on behalf all of the Photographers, Named Plaintiff will apply to the Court to receive Three Thousand and No/100ths Dollars ($3,000.00) as a Service Award from the Maximum Settlement Amount.

6

The total amount of any Service Awards will be deducted from the Maximum Settlement Amount. Defendant will not oppose such application. In consideration for that award, the Named Plaintiff will agree to an additional general release of all claims as defined in Section 4(B). To the extent that the Court does not approve any Service Award, Named Plaintiff will only be subject to the releases defined in Sections 4(A).

(B)     The application for Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Settlement Approval Motion, entry of final judgment and/or dismissal.

## 3.4    Net Settlement Fund and Allocation to Photographers.

(A)     The allocation to Photographers for Settlement Checks will be made from the Net Settlement Fund.

(B)     All Claimants will receive a share of the Net Settlement Fund pursuant to the following formula: (each Photographer's workweeks during the Recovery Period / the total of all Photographers' workweeks during the Recovery Period) x Net Settlement Fund. However, no Claimant shall receive a share of less than Twenty-Five Dollars and no cents ($25.00).

(C)     The calculation of all allocations to Photographers pursuant to this Section 3.4 shall be based on Defendant's business records.

## 3.5    Tax Characterization.

(A)     For tax purposes, 100% of payments to Claimants pursuant to Section 3.4 shall be treated as reimbursement for business expenses, shall not be subject to deductions, and shall not be reported on either an IRS Form W-2 or IRS Form 1099.

(B)     Any Court-approved Service Award shall be treated as non-employment income, shall not be subject to deductions, and shall be reported on an IRS Form 1099.

(C)     Named Plaintiff acknowledges and agrees that each Claimant will be solely responsible for all taxes, interests and penalties, if any, due with respect to any payment received pursuant to this Agreement.

## 3.6    Settlement Payments to Claimants

(A)     By no later than ten (10) days after the Effective Date, Defendant shall provide Named Plaintiff's counsel with Settlement Checks for Claimants who have submitted valid claim forms, a check in the amount of the Court-approved Service Award made payable to "Ethan Merbaum," and a check for all fees and costs

7

approved by the Court made payable to "Weinhaus & Potashnick," whose FEIN is 43-1910658.

(B)    By no later than twenty (20) days after the Effective Date, Named Plaintiff's Counsel will mail (1) Settlement Checks to Claimants who have submitted valid claim forms, calculated in accordance with Section 3.4 hereof, and (2) the check to the Named Plaintiff for his Service Award; all as approved by the Court.

(C)    Absent other instructions, the above Settlement Checks issued pursuant to this Section will be mailed by Plaintiff's Counsel to the Claimants at the address listed on each Claimants' respective Claim Form. If a Claimant's check is returned with a forwarding address, Named Plaintiff's Counsel shall promptly re-mail the check to the forwarding address. If a Claimant's check is returned without a forwarding address, Named Plaintiff's Counsel will perform an Accurint search. If a new address is obtained, Named Plaintiff's Counsel will promptly re-mail the check to the Claimant. If a new address is not obtained from the U.S. Post Office or through an Accurint search, Named Plaintiff's Counsel and Defendant's Counsel will confer in good faith, on a case-by-case basis, regarding whether to conduct further traces.

(D)    If a Claimant reports that his/her Settlement Check was lost, stolen, or undelivered, Defendant shall promptly issue a stop payment order on the original check and provide Named Plaintiff's counsel a replacement check made payable to such Claimant.

(E)    Any Claimant who does not cash or negotiate his/her Settlement Check within the Acceptance Period will still be bound by all terms and conditions of this Agreement, including the releases contained in Section 4 and will still be deemed a Claimant.

(f)    Named Plaintiff's Counsel shall include the following release language on the back of each Settlement Check, including the checks for the Service awards:

> My signature or negotiation of this check constitutes a full, final and complete release by me of all Released Claims against Cady Studios LLC and Released Parties, as defined in the Settlement and Release Agreement entered in the matter, entitled *Merbaum v. Cady Studios, LLC,* Case No. 1:16-cv-04623-TWT.

(G)    Any unclaimed funds and any funds attributable to unnegotiated Settlement Checks that remain uncashed and unnegotiated after expiration of the Acceptance Period shall belong to Defendant.

3.7    **Settlement Payments Do Not Trigger Additional Benefits or Incentives.** All payments to Claimants shall be deemed to be paid to such Claimants solely in the year in which such payments actually are received by the Claimants. The Parties agree and the Claimants acknowledge that the payments provided for in this Agreement are the sole payments to be

made to the Claimants in connection with this Settlement or the Action, and that the Claimants are not entitled to any new or additional compensation, benefits or incentives as a result of having received such payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might currently be in effect or have been in effect during the period covered by this Settlement).

## 4. RELEASE

(A)    Named Plaintiff and each Claimant shall, on behalf of himself or herself and his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully and finally release, remise, and finally and forever discharge the Released Parties from any and all federal and state wage and hour claims, and all federal and state wage and hour claims which could reasonably be based on the facts alleged in Named Plaintiff's Complaint, accrued through August 31, 2017, including all such claims arising under the laws of the states of Georgia, Illinois and Florida, all local laws, all claims and all claims asserted in the Litigation ("Released Claims"). The Released Claims include all such claims for unpaid regular or overtime wages, claims under any wage and hour and wage payment law claims (including statutory claims), all derivative benefit claims (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits), arising under any state or local wage and hour law or regulation, interest on such claims, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind of nature whatsoever related to such claims from the date of the earliest statute of limitations applicable to the claims of any Claimant through August 31, 2017.

(B)    Additionally, as part of the consideration for the Service Award contemplated above, Named Plaintiff, on behalf of himself and his respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, is deemed to fully and finally release, remise, and finally and forever discharge the Released Parties from any and all federal, state and local claims accrued through August 31, 2017, of whatever nature, whether or not asserted in this Litigation. Such released claims include all such claims for damages, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind or nature whatsoever related to such released claims from the date of the earliest statute of limitations applicable to the claims through the date of this Agreement.

## 5. NO ADMISSION

Defendant denies that it violated the law in any manner asserted in, alleged in, or related to the Litigation. Defendant has agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefit to Defendant's business interests; (ii) avoid the further expense and disruption of Defendant's business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest. Nothing in this Agreement

shall be deemed, construed or used as an admission of liability, culpability, negligence, wrongdoing, or unlawful conduct of any kind or nature whatsoever by or on behalf of Defendant or Released Parties, or as an admission that a class or collective action should be certified for any purpose other than settlement purposes.

## 6.    MISCELLANEOUS PROVISIONS

**6.1**    **Binding Agreement**.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**6.2**    **Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to effectuate this Agreement, including during any appeals, and to obtain the Court's approval of this Agreement and all of its terms and to defend this Agreement and the settlement from any legal challenge. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. The Parties will fully cooperate with each other to accomplish, implement and effectuate the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement.

**6.3**    **No Assignment**.  Named Plaintiff's Counsel and the Named Plaintiff, on behalf of the Claimants, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**6.4**    **Entire Agreement**.  This Agreement constitutes the entire, complete and integrated agreement between the Parties with regard to the subject matter contained herein, including all settlement terms, and supersedes all previous oral or written agreements (including the summary of settlement terms executed at the mediation), and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. This Agreement may not be amended or modified except by a writing duly signed by the Parties or their duly authorized representatives.

**6.5**    **Arms' Length Transaction; Materiality of Terms**.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length with the assistance of a professional class and collective action wage and hour Mediator, A. Lee Parks, Esq. ("Mediator"). All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.6**    **Captions**.  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience or reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.7**    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**6.8    Blue Penciling/Severability**.  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, with the exception of the release contained herein, such finding shall not affect the validity of the remaining portions of this Agreement which will remain in full force and effect and will be construed and enforced to effect the purposes thereof to the fullest extent permitted by law.

**6.9    Governing Law**.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Georgia, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**6.10   Reference of Disputes to Mediator.**  The Parties agree that, in the event of any dispute regarding the interpretation or validity of or otherwise arising out of the settlement or this Agreement, the Parties shall first attempt in good faith to resolve any such disputes through the Mediator.  In the event that the Mediator determines that he is unable to resolve any such dispute, the Parties agree that they shall be subject to the jurisdiction of the Court as set forth in the subsequent paragraph.

**6.11   Waivers, etc. to Be in Writing**.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.12   When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**6.13   Signature of Named Plaintiff**.  This Agreement is valid and binding if signed by Defendant's authorized representative and the Named Plaintiff. The Parties freely agree to sign this Agreement and by signing this Agreement the Parties are bound by the terms herein stated.  However, any of the Parties' failure to sign the Agreement shall nullify the Agreement.

**6.14   Facsimile and Email Signatures**.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be

deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email

**6.15** **Parties' Authority**. The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Claimants to the terms and conditions thereof.

**6.16** **Not All Claimants' Signatures are Required**. Because the Photographers are so numerous, it is impossible or impractical to have each one execute this Agreement. The Notice will advise all Photographers of the binding nature of the release and such shall have the same force and effect as if this Agreement were executed by each Photographers.

DATED: *October 20*, 2017          DEFENDANT CADY STUDIOS, LLC

By: _____

Its: *PRESIDENT*_____

DATED: _____, 2017          NAMED PLAINTIFF ETHAN MERBAUM

By: _____
        Ethan Merbaum

**6.11**  **Waivers, etc. to Be in Writing**.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this ~~ment~~, shall be valid or binding unless in writing, signed by or on behalf of all ~~~~ and then only to the extent set forth in such written waiver, modification or ~~~ent~~, subject to any required Court approval.  Any failure by any party to insist ~~~ ~~~ ~~~e~~ strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.12**  **When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

11

**6.13**  **Signature of Named Plaintiff**.  This Agreement is valid and binding if signed by Defendant's authorized representative and the Named Plaintiff.  The Parties freely agree to sign this Agreement and by signing this Agreement the Parties are bound by the terms herein stated.  However, any of the Parties' failure to sign the Agreement shall nullify the Agreement.

**6.14**  **Facsimile and Email Signatures**.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email

**6.15**  **Parties' Authority**.  The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Claimants to the terms and conditions thereof.

**6.16**  **Not All Claimants' Signatures are Required**.  Because the Photographers are so numerous, it is impossible or impractical to have each one execute this Agreement.  The Notice will advise all Photographers of the binding nature of the release and such shall have the same force and effect as if this Agreement were executed by each Photographers.

DATED: _____, 2017        DEFENDANT CADY STUDIOS, LLC

By:_____

Its:_____

DATED: **10/19**, 2017        NAMED PLAINTIFF ETHAN MERBAUM

By:_____
Ethan Merbaum